GARNER *v.* CLUCK.

4-7851                                    193 S. W. 2d 661

Opinion delivered March 18, 1946.

Rehearing denied April 29, 1946.

*Hardin, Barton & Shaw,* for appellant.

*Howell & Howell,* for appellee.

McHANEY, Justice. On February 28, 1942, appellees, A. G. Cluck, Helen Maness and Marie Lincks, filed suit against J. R. Garner in the Crawford circuit court to recover damages for personal injuries sustained by them as a result of a collision between the automobile in which they were riding, traveling west, and which was owned and operated by appellee Cluck, and a car owned by said J. R. Garner, traveling east, and being driven by a girl, Wilma Adams, ''at the instance, request and directions of said defendant, J. R. Garner, both of whom were highly intoxicated, in a careless, reckless and negligent manner and at an excessive rate of speed of sixty-five miles per hour,'' as alleged in the complaint. Summons was issued on the same date and served on March 2, 1942, the return of Deputy Sheriff C. Groves showing service on J. R. Garner, which was filed March 4, 1942. On July 6, 1942, the case was tried in the absence of defendant, J. R. Garner, he having defaulted, and resulted in judgments

against him as follows: Cluck $175, Maness $3,000, and Lincks $2,000.

No further action appears to have been taken until June 21, 1945, when appellees caused a writ of garnishment to issue against "J. R. or J. B. Garner" for the Merchants National Bank of Ft. Smith, which, being served on said bank, impounded the funds of appellant, J. B. Garner.

On June 28, 1945, J. B. Garner filed a verified motion to dissolve the writ of garnishment, alleging that his name is not J. R. Garner, but J. B. Garner; that no summons was ever issued for or served upon him; and that he had no notice of the pendency of said action, no knowledge or notice of the trial of the case or the judgment therein until June 22, 1945, when the writ of garnishment was served on said bank. He also asserted a meritorious defense to the action of appellees. The bank filed answer to the garnishment stating that it had funds to the credit of J. B. Garner and Mrs. J. B. Garner jointly.

Trial on the motion resulted in the overruling thereof, the court finding that J. B. Garner had been served with summons in the case and that he had knowledge of the pendency of the suit. This appeal followed. Appellant was allowed to give bond to release the garnishment, which he did.

We think the court erred in refusing to dissolve the garnishment and discharge the garnishee on appellant's motion.

It is undisputed that J. R. Garner was sued and not J. B. Garner, that service was on J. R. Garner as shown by the officer's return, and that the judgment was against J. R. Garner. That there was no service on J. B. Garner is vehemently asserted by him, and, in effect the deputy, Mr. Groves, who made the return showing service on J. R., denies that he served J. B. He knew J. B. Garner, for on the night of the accident, February 15, 1942, he had arrested appellant on a disorderly charge at a night club in Ft. Smith known as 21 Club, and put him in jail.

We are of the opinion that the clerk of the court had no power or authority to issue a writ of garnishment against any person other than one who the "plaintiff shall have reason to believe—is indebted to the defendant, or has in his hands or possession goods, chattels, moneys —belonging to such defendant." Section 6119, Pope's Digest. The garnishment here was issued on a judgment against J. R. Garner and the clerk had no right to include therein a person other than the judgment debtor. The allegations to obtain the writ herein were first, that said bank was "indebted to the said defendant J. R. Garner, or J. B. Garner" in a named sum; and, second, that the bank or garnishee had in its hands goods, etc., "belonging to said defendants." There was only one defendant, only one person against whom appellees had a judgment, and that was J. R. Garner, and the clerk had no authority to name any one else as a judgment debtor in the writ. Before J. B. Garner's funds in the bank could lawfully be impounded, there would have to be a judgment against him, and there is no such judgment.

In the early case of *State* v. *Smith*, 12 Ark. 622, 56 Am. Dec. 287, the court, following the common law rule, said: "The law knows of but one christian name. The entire omission of a middle letter is not a misnomer or variance," and quoted from *Keene* v. *Meade*, 3 Peters 9, 7 L. Ed. 581, that: "The middle letter is immaterial, and a wrong letter may be stricken out or disregarded." This case was cited and followed in *Fincher* v. *Hanegan*, 59 Ark. 151, 26 S. W. 821, 24 L. R. A. 543, where it was held that the record of a crop mortgage executed by Henry *M*. Ward was constructive notice to a second mortgagee on the same crop executed by Henry *N*. Ward, under the rule stated in *State* v. *Smith, supra*, where it did not appear that there was more than one Henry Ward in the county. Chief Justice BUNN dissented from that holding. In the later case of *McReynolds* v. *First Nat'l Bank*, 156 Ark. 291, 245 S. W. 819, W. A. Hunter executed a crop mortgage to McReynolds but signed it "W. H. Hunter." Later he executed another mortgage on the same property to First Nat'l Bank and signed it

in his correct name, W. A. Hunter. This court held that "where initials only are used, they take the place of the christian name, and in such case the correct initials are necessary to give notice." Headnote 1. And so it was held that the record of the mortgage to McReynolds, under the name of W. H. Hunter, was not constructive notice to the bank on its subsequent mortgage executed by W. A. Hunter. The reason for the rule, said the late Mr. Justice HART for the court is that: "It has grown into such universal practice to sign one's name by using the initials instead of the full christian name that it would not do to hold that a mistake in the middle initial amounted to no more than such a mistake when the christian name is written in full. If such is the case the recording act will fall far short of its purpose."

The trend of modern authority is in accord with the holding in the McReynolds case and the general rule as to judgments, says 30 Am. Jur., § 92, p. 865, "is that the principle of *idem sonans* is not applicable to judgments entered in different initial letters from the usual form in which the name is written and spelled in the English language, although the pronunciation is the same. Where an initial is employed instead of the first name of the judgment debtor, an error therein is as fatal as it would be in the name itself. In regard to the middle initial, some authorities hold that if a middle initial is used, it must be the proper one, especially when there are other persons in the district who have a similar name." There is an annotation on the subject in 122 A. L. R. 916.

While our McReynolds case above cited relates to constructive notice of a recorded chattel mortgage, we think the rule would apply with even more force to a judgment with a wrong middle initial, since a judgment is a lien on the real property of a judgment debtor of the county where rendered from the time of its rendition. Section 8255, Pope's Digest. By Section 8238 judgments are required to be indexed and cross-indexed, and an examination of the record would not have disclosed a judgment against appellant, since there was no such judgment.

We are, therefore, of the opinion that the court erred in refusing to quash the writ of garnishment, which impounded appellant's account with said bank, but since a supersedeas bond, same being a cashier's check, was given in the trial court, and an order entered discharging the garnishee, the order of this court is that the judgment be reversed and the cashier's check be released and surrendered to appellant by the clerk of the lower court or to the issuing bank, whichever is the owner thereof.

We are asked to hold the original judgment against J. R. Garner void, but we think J. B. Garner has no right to set aside a judgment against J. R. Garner. Before it can be effective as to him a judgment will have to be had against him in some manner comformably to law.

A question not presented or decided is the right of appellees to garnish the joint account of J. B. Garner and Mrs. J. B. Garner on a valid judgment against J. B. Garner only.