Joseph KIVEL; Marilyn B. Mansour, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 87–6347.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 7, 1988.

Submitted March 7, 1989.

Decided June 26, 1989.

Lawrence R. Lieberman, Levinson & Lieberman, Beverly Hills, Cal., for plaintiffs-appellants.

Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before BROWNING, SCHROEDER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Joseph Kivel and Marilyn B. Mansour (the plaintiffs) brought suit under 26 U.S.C. § 7426(a)(1) and (b)(1) seeking relief from the seizure of their property by the Internal Revenue Service. The case turns on what, under federal tax law, is "a reasonable inspection" of the public index of deeds to real property in Orange County, California. The district court gave judgment in favor of the United States. We affirm.

## FACTS

The relevant chain of title begins with Bobbie Morgan Lane, who was born Bobbie Maurene Fines. She was married in 1972 to Creal Morgan, subsequently deceased. She was married September 10, 1976 to Benjamin Ryan Lane. She subsequently used the names Bobbie Morgan Lane and Bobbie Morgan. The relevant history of her property is as follows:

1. On December 10, 1976 Benjamin R. Lane and Bobbie Morgan Lane, as husband and wife, purchased the residential real property at 33 Mainsail Drive, Newport Beach, County of Orange, California.

2. On September 12, 1977 the Internal Revenue Service recorded a federal tax lien against the property in the name of "Bobbie M. Morgan also know as Lane."

3. On November 14, 1977 the Internal Revenue Service recorded a Certificate of Release of this lien in the name of "Bobbie M. Morgan also known as Lane."

4. On June 23, 1981 Benjamin R. Lane conveyed the property to Bobbie Morgan Lane as her sole and separate property.

5. On June 29, 1981 a Notice of Federal Tax Lien against the property was recorded in the names of Bobbie Morgan, the Morgan Employment Agency, and Morgan Nurses Registry for employment taxes unpaid by these entities after notice and demand for payment.

6. On July 16, 1981 a second Notice of Federal Tax Lien was filed describing a second unpaid assessment against Bobbie Morgan, Morgan Employment Agency and Morgan Nurses Registry.

7. On October 27, 1981 Bobbie Morgan Lane recorded a Declaration of Married Person's Separate Homestead. A box at the top of the form indicated that recording was requested by Bobbie Morgan.

8. On October 13, 1981 Bobbie Morgan Lane obtained a loan from Precision Mortgage Services, secured by a deed of trust which was recorded on November 19, 1981.

9. On December 16, 1981 a Notice of Federal Tax Lien was recorded in the names of Bobbie Morgan Lane, Morgan Employment Agency and Morgan Nurses Registry. Among the assessments described in this notice were the assessments previously indicated in the Notices of Federal Tax Liens filed in June and July 1981.

10. On January 28, 1982 a Notice of Default under the Precision Mortgage Services deed of trust was recorded as a result of the default of Bobbie Morgan Lane.

11. On April 8, 1982, the Title Insurance and Trust Company, at the time the insurer of the title for the Precision Mortgage trust, wrote the Internal Revenue Service to declare that "the federal tax liens recorded against Bobbie Morgan, Morgan Employment Agency and Morgan Nurses Registry do not impart constructive notice to any one dealing with property owned by Bobbie Morgan Lane" and that in the event of foreclosure, a purchaser of the property "would take free and clear of these liens, subject, of course, to the redemption laws." The Internal Revenue Service did not reply to this letter.

12. On May 11, 1982 a notice of a Trustee's sale was recorded, indicating that the property would be sold at public auction without warranties.

13. On June 7, 1982 a Notice of State Tax Lien was recorded as to Bobbie M. Morgan also known as Bobbie Morgan Lane.

14. On June 18, 1982 a notice of sale by the trustee was recorded under the deed of trust of Bobbie Morgan Lane.

15. On October 31, 1984 the plaintiffs purchased the property from the purchasers from the trustee. The plaintiffs had no knowledge of the two federal tax liens recorded on June 29, 1981 and July 16, 1981.

16. On August 6, 1985 the Internal Revenue Service levied on the property.

## ANALYSIS

A federal tax lien is wholly a creature of federal statute. Federal law establishes what is a sufficient filing. *United States v. Polk*, 822 F.2d 871, 873 (9th Cir.1987). The proper form of filing a tax lien is left to the Secretary to the Treasurer and defined in the regulations as Form 668, "Notice of Federal Tax Lien Under Internal Revenue Laws." As provided under 26 U.S.C. § 6323(f)(3), such a form, if properly filled out and filed in the correct location, is "valid notwithstanding any other provision of law regarding the form or content of a notice of lien." *Polk*, 822 F.2d at 873. There is no dispute that the notices of liens here were filed in the correct location and on Form 668.

In *Polk* we distinguished *United States v. Clark*, 81–1 U.S.T.C. ¶ 9406 (S.D.Fla. 1981), which had held a tax lien invalid because not filed under the new legal name of the taxpayer. Our distinction was on two grounds, first that *Clark* relied on 26 U.S.C. § 6323(f)(4), which was not enacted when the Internal Revenue Service filed its notice of lien on Clark's property and second, on the ground that the purchaser in *Clark* relied on the taxpayer's correct legal name and failed to find notice of a lien. In short we made the correct legal name determinative and rejected the idea that the Internal Revenue Service had to record its liens under every known name of the taxpayer. We said at 874: "If Congress had intended to impose upon the Internal Revenue Service the duty to investigate what property is owned by a delinquent taxpayer, record the name under which it was acquired, and file a separate notice of tax lien for each such name, it could have done so." We held that Congress had not created such a requirement.

Under the law established by *Polk*, the case might end here if it were clear that "Bobbie Morgan" was the correct legal name of Bobbie Morgan Lane at the time the notices of lien were filed. We need not decide whether a tax lien filed under the taxpayer's full legal name is valid against a subsequent purchaser. *See Polk* at 874. In our case, although the liens give the names under which Bobbie Morgan Lane did business, it is not clear whether these names were the correct legal names of the taxpayer. "Bobbie Morgan" was neither the taxpayer's maiden name nor legal name. There is no evidence that she had established "Morgan Employment Agency" or "Morgan Nurses Registry" as business names.

We therefore have to ask whether the way the notices were filed complied with 26 U.S.C. § 6323(f)(4). This statute governs the validity of liens in a state, such as

California, whose laws hold that a deed is valid against a purchaser of property only if the deed has been entered and recorded in the public index in such a manner that a reasonable inspection of the index will reveal the existence of the deed and whose recording system provides an adequate system for the public indexing of federal tax liens. In such a state, the federal requirements are not met unless the fact of filing is recorded in the index "in such a manner that a reasonable inspection of the index will reveal the existence of the lien." *Id.*

■ The parties have agreed that what title companies in fact do is not itself decisive of the question of reasonableness. The district court heard conflicting expert testimony and then reached its own conclusion as to what was reasonable. Clearly, "reasonable" is a mixed question of fact and law. We review the question de novo and make our own determination of what is reasonable.

■ The plaintiffs in the present case contend that their title depended on a chain which went back to Bobbie Morgan Lane and that a reasonable inspection of the index would never have led them to the name Bobbie Morgan. The United States contends that there were documents that a search would have uncovered that would have disclosed that Bobbie Morgan Lane was also known as Bobbie Morgan and that on discovering this fact a reasonable searcher would have searched under Bobbie Morgan and discovered the tax liens.

At the outset we must decide whether "a reasonable inspection of the index" means that a searcher need only look at the index and has no obligation to go from the index to the actual conveyances that are indexed. Such a literal construction of language would not make sense. It is evident that as to documents that are in the actual chain of title the searcher must at least look at such documents as may have a current effect and must then act on the notice imparted.

The plaintiffs here argue that when the searcher saw the declaration of a separate homestead in the index, the searcher had no obligation to look at the document be-

cause the homestead was no longer of significance once Bobbie Morgan Lane was out of the title. Similarly, they argue that the searcher would have had no obligation to look at the actual June 7, 1982 notice of a state tax lien, which was recorded too late to affect the foreclosure sale and so could not affect the validity of the sale. Again they argue there was no need for the searcher to look at the September 12, 1977 federal tax lien, because it was released by the Certificate of Release on November 14, 1977. Finally, they contend that there was no need for the searcher to look at the notices of federal tax lien filed on July 16, 1981, October 27, 1981 and December 16, 1981 because under California law a foreclosure sale by a trustee has a presumption of regularity. *Hohn v. Riverside County Flood Control Water Conservation District*, 228 Cal.App.2d 605, 652, 39 Cal.Rptr. 647 (1964). The trustee recited that "all requirements of law" regarding notice had been given, and under *California Civil Code* § 2924, such a recital is "conclusive evidence" in favor of a bonafide purchaser. The plaintiffs add that since a California title often goes back to the King of Spain there is often a number of documents in the chain of title that time has rendered obsolescent and void, and it would be unreasonably burdensome to ask an examiner to read each document to ascertain the incidental information it might contain.

The plaintiffs' argument has a good deal of appeal. Accepted, it would make the lives of title examiners easier and title insurance less expensive. On the other hand, to accept the argument is to impose on the Internal Revenue Service, if it wants to be sure of its liens, the difficult burden of checking whether the taxpayer has acquired property under a different name from the name under which the taxpayer has filed a return.

We need not decide in this case whether liens would always be valid simply because they are in the names used in the returns. We need not decide the outer limits of a reasonable inspection of the index. Without accepting or rejecting the broader ar-

guments of either side, we decide on a narrower ground. The district court found credible the testimony of the government's expert, Daniel Cox, as to what a reasonable search in this case would have entailed, and we find the practice he described reasonable. We summarize Cox's testimony:

Cox went to the Orange County Recorder's office on February 2, 1987. First, he used the trustee's deed recorded on June 18, 1982, by which Bobbie Morgan Lane conveyed the subject property to Precision Reconveyance Corporation, and the grant deed recorded on December 22, 1976, by which Benjamin R. Lane and Bobbie Morgan Lane, husband and wife, as joint tenants, acquired the subject property from Walter and Jewel Keusder, to define the chronological scope of his title search.

Second, he inspected the grantor/grantee index for the period December 22, 1976— June 18, 1982. The purpose of this inspection was to determine whether actions by Benjamin and Bobbie Morgan Lane placed any encumbrances or clouds on the title before it was conveyed to Precision. The grantor/grantee index had numerous entries under "Lane, Benjamin R. and Bobbie Morgan." Cox abstracted those encumbrances by listing on his workpapers the information contained in each entry. He then turned to "Lane, Bobbie M." and "Lane, Bobbie Morgan" in the grantor/grantee index and abstracted each entry found under these names. Cox testified that it would be the practice of California title searchers to abstract the information under both "Lane, Bobbie M." and "Lane, Bobbie Morgan" because the middle name or middle initial is not dispositive as to legal title in California. If, for example, one was examining the ownership of property whose title was held by John Arthur Smith, and the grantor/grantee index listed John A. Smith and John Smith, it would be incumbent upon the searcher to look under those names as well.

Third, Cox went to the viewing machine and looked at each of the documents listed on his workpapers. One of these documents was the November 14, 1977 Certificate of Release of the September 12, 1977

tax lien. Cox was asked why he would look at such a release and replied, "You can't tell from the index ... [The index] only indexes a release. It can be any other lien. You have to look at that release to identify what it is referring to." By looking at this release one discovers that the certificate referred to a lien against property "in the name of Bobby M. Morgan also known as Lane." This document put the searcher on notice that Bobbie Morgan Lane was also known as Bobbie M. Morgan. This view would be confirmed because the address of the property subject to the lien was 33 Mainsail Drive and this property was the property conveyed by Bobbie Morgan Lane.

Judge Tevrizian asked if Cox would have come to the conclusion that Bobbie Morgan Lane was also known as Bobbie M. Morgan even if he had not known in advance that there was a dispute as to whether Bobbie Lane and Bobbie Morgan were one and the same. Cox responded, "No question, absolutely yes. I've done this hundreds of times and hundreds of titles." Once on notice, the searcher, Cox indicated, would go back to the grantor/grantee index and search under "Bobbie M. Morgan" and "Bobbie Morgan." In the grantor/grantee index under "Bobbie Morgan" are the June 29, 1981 and the July 16, 1981 Notices of Federal Tax Lien. It is these liens that now encumber the plaintiff's property.

The district court did not err in concluding that a reasonable inspection of the grantor/grantee index would have disclosed the existence of these liens.

AFFIRMED.